IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CRUZ LEONIDAS ACOSTA-CASTILLO,<br>ESPERANZA ROSARIO-ALCANTARA,<br><br>**Plaintiffs,**<br><br>       **v.**<br><br>RAMON GUZMAN-LORA,<br>ZULMA ALVAREZ-RIVERA,<br>AND THE CONJUGAL PARTNERSHIP<br>BETWEEN THEM d/b/a "PRESTAUTO<br>IMPORT S.A.", *et al.*,<br><br>       **Defendants.** | **CIVIL NO.** 11-1513 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

     Before the Court is plaintiff's motion for default judgment. (Docket No. 14.)  Having considered the complaint and the arguments contained in plaintiff's motions, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for default judgment.

**DISCUSSION**

I.   **Background**

     A.   **Procedural Background**

          On June 3, 2011, plaintiffs Cruz Leonidas Acosta-Castillo ("Acosta") and his wife, Esperanza Rosario-Alcantara ("Rosario"), and the conjugal partnership between them (collectively, "plaintiffs") filed a complaint against Ramon Guzman-Lora ("Guzman") and his wife, Zulma Alvarez-Rivera ("Alvarez") and the conjugal partnership between them, and Prestauto Import S.A.

("Prestauto"), (collectively, "defendants").[1]   The complaint is brought against defendants Guzman and Lora in their personal capacities and against them as individuals doing business as Prestauto.   The plaintiffs allege a breach of contract, unjust enrichment, and investment fraud.

On September 14, 2011, the plaintiffs filed a motion for entry of default against all defendants, and the Clerk entered default against defendants Alvarez and Guzman, their conjugal partnership, and Prestauto (Docket Nos. 9 & 10.)   On December 26, 2011, plaintiffs filed a motion for default judgment against all defendants. (Docket No. 14.)   On August 16, 2012, an evidentiary hearing was held pursuant to Federal Rule of Civil Procedure 55(b). (Docket Nos. 15, 18, & 24.)

**B.   Factual Background**

The following factual findings are derived from plaintiffs' complaint and testimony:

Plaintiffs are residents of Puerto Rico.  (Docket No. 3 at ¶ 3.)  They allege that defendants Guzman and Rivera are married and residents of Florida.   Id. at ¶ 4.   Prestauto, which has

---

[1] Plaintiffs also include in the complaint several unknown defendants: Companies A, B, & C, John Doe, and Mary Doe. (Docket No. 1 at ¶¶ 6-7.)  There is no indication in the record, however, that these defendants were ever identified, named, or served. Because it has been well over 120 days since the filing of the complaint, any claims against these anonymous defendants are **DISMISSED WITHOUT PREJUDICE.**  See Fed.R.Civ.P. 4(m); (Docket No. 1.)

addresses in Florida and the Dominican Republic, is a company

allegedly owned by defendants Guzman and Rivera.  Id. at ¶¶ 9-10.

In or around 1982, plaintiffs allegedly met defendants Guzman and

Rivera while vacationing in the Dominican Republic.  Id. at ¶ 8.

After being friends for about twenty years, defendant Guzman

allegedly made a business proposition[2] to plaintiffs:  plaintiffs

would invest funds through defendant Guzman's company and via

investments that defendant Guzman controlled; plaintiffs and other

investors would receive a high rate of return with "little margin

of loss on the investment."  Id. at ¶¶ 9-10.

        Plaintiffs state that the rate of return on their

investments was approximately a six to eight percent gain.  Id. at

¶ 11.  Plaintiffs contend that each time that they invested money

into Prestauto, defendant Guzman issued certificates to plaintiffs

and claimed that the certificates could be exchanged for cash at

any time.  Id. at ¶ 12.  Plaintiffs presented five certificates

signed by defendant Guzman for Prestauto on dates ranging from

August 2008 to October 2009.  (Plaintiffs' Exh. 1.)  From August

_____

        [2] It is unclear how long plaintiffs and defendants had known
each other before defendants allegedly made the business
proposition to plaintiffs.  In their complaint, plaintiffs state
that they had known defendants twenty-seven years before defendants
asked plaintiffs to invest in their company.  (Docket No. 3 at
¶ 9.)  Plaintiffs have presented evidence, however, that they had
already been investing in defendants' company in 2008.
(Plaintiffs' Exh. 1.)  Furthermore, during the August 16, 2012
evidentiary hearing, plaintiff Acosta stated that he began
investing in Prestauto in 2000.

2008 to October 2009, plaintiffs allegedly invested $141,712.10[3] in defendant Guzman's company.   (Docket No. 20 at pp. 10-11.) Plaintiffs argue, however, that the certificates of investment are not redeemable in any financial institution and have no value. (Docket No. 3 at ¶ 15.)   Plaintiffs also state that they have repeatedly tried to inquire about the status of their investments and to access their funds by contacting defendants via telephone calls and visits to defendants' place of business but plaintiffs allegedly have had no success.  Id. at ¶ 17.

Based on these allegations, plaintiffs argue that they have suffered severe damages, which include loss of monies and profits, mental suffering, and anguish.  Id. at ¶ 18.  They also contend that by not returning the amounts in the certificates, defendants have "materially breached the [investment] contract." Id. at ¶ 20.  Furthermore, they argue that defendants have been unjustly enriched at plaintiffs' expense.  Id. at ¶ 24.  Finally,

---

[3] Plaintiffs' complaint states that he invested $227,865.73 in Prestauto during this period of time.  (Docket No. 3 at ¶ 11.) During the evidentiary hearing, however, plaintiff Acosta presented certificates and testimony showing that he had invested $53,045.07 Dominican Pesos in Prestauto.  (Plaintiffs' Exh. 1.)  Plaintiffs stated during the hearing that this amount was the equivalent of $2,652.25 US Dollars in August 2008.  (Docket No. 20 at ¶¶ 10-11.) Plaintiff Acosta presented other certificates showing that between 2008 and October 2009, he gave Prestauto an additional $139,059.85 in US Dollars. (Plaintiffs' Exh. 1.)  In total, these certificates show that plaintiffs invested $141,712.10, not $227,865.73. Therefore, the Court will use the $141,712.10 figure and not the $227,865.73 stated in plaintiffs' complaint or the $139,000 stated during the hearing.

they argue that defendants have committed investment fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5.  Id. at ¶ 27.  Based on these allegations, plaintiffs conclude in their motion for default judgment that defendants must pay (1) $239,000 for all damages for breach of contract, unjust enrichment, mental anguish, and securities fraud; (2) $15,000 in attorney's fees and costs in the amount of $1,000.00.  The Court will address each argument in turn.

After reviewing the plaintiffs' complaint, the transcript from the evidentiary hearing, and plaintiffs' exhibits, the Court grants the motion with regard to the breach of contract claim but denies with prejudice the unjust enrichment claim.  The Court also denies without prejudice plaintiffs' securities fraud claims.  Furthermore, the Court denies the plaintiffs' claims for attorney's fees.

## II.  Legal Analysis

### A.  Default Judgment Standard

Pursuant to Rule 55(b), a plaintiff "must apply to the court for a default judgment" where the amount of damages claimed is not a sum certain.  When necessary to effectuate judgment, "the court may conduct hearings or make referrals" for numerous purposes, including "determin[ing] the amount of damages."  Fed.R.Civ.P. 55(b).  Entry of default, however, "'constitutes an admission of all facts well-pleaded in the complaint'" and

precludes a defaulting defendant from contesting liability.  See Benitez-Ruiz v. Hosp. Buen Pastor, No. 03-1330, 2009 WL 2151285 at *2 (D.P.R. July 14, 2009) (quoting Metropolitan Life Ins. Co. v. Colon-Rivera, 204 F.Supp.2d 273, 274-75 (D.P.R. 2002)); see also In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002) ("[I]t is precisely the right to contest liability that a party gives up when it declines to participate in the judicial process.")(internal citations omitted).  A court may, however, "examine a plaintiff's complaint to determine whether it alleges a cause of action."  Quirindongo-Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992).

     **B.   Choice of Law**

          As an initial matter, the Court finds that Puerto Rico law applies to plaintiffs' claims.  Plaintiffs bring their state law claims to federal court pursuant to diversity jurisdiction. (Docket No. 3 at ¶¶ 1-2.)  Plaintiffs allege that they are residents of Puerto Rico and defendants Guzman and Alvarez are residents of Florida.  Id. at ¶¶ 3-4.  Plaintiffs also allege that Prestauto has addresses in Florida and the Dominica Republic. According to the doctrine set out in Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), when a federal court is sitting in diversity jurisdiction, it must apply state substantive law for state law claims.  See Hoyos v. Telecorp Comm'ns. Inc., 488 F.3d 1, 5 (1st Cir. 2007) (internal citations omitted.)  Therefore, for contract

matters, state substantive law applies.  See e.g., Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir. 2009) ("In Puerto Rico, the prescription of civil actions is a question of substantive rather than procedural law.") (internal citations omitted); Montalvo v. Gonazlez-Amparo, 587 F.3d 43, 46 (1st Cir. 2009) ("When applying Puerto Rico law to substantive matters, Puerto Rico courts also apply Puerto Rico's statute of limitations, as well as the concomitant tolling provisions of those statutes.") (internal citation omitted); Crellin Tech, Inc. v. Equipementlease Corp., 18 F.3d 1, 4 (1st Cir. 1994) (applying state substantive law to determine whether it could enforce a contract).

        "For substantive matters, a federal court presiding over a diversity case must apply the choice of law doctrine of the forum territory." Bianchi-Montana v. Crucci-Silva, 720 F. Supp. 2d 159, 162-63 (D.P.R. 2010) (citing New Ponce Shopping Center, S.E. v. Integrand Assur. Co., 86 F.3d 265, 267 (1st Cir. 1996)(internal citation omitted)).  Puerto Rico is the forum territory in this case and it applies the "dominant or significant contacts" test for contract actions.  Id. (internal citations omitted).  The test requires that the "law of the jurisdiction with the most significant contacts to the claim is applied to the case." Id. While Prestauto is allegedly located in the Dominican Republic, the plaintiffs sent all of their money to the defendants using checks from an American bank in Puerto Rico.  (Docket No. 3 at p. 15.)

The dominant contact regarding the plaintiffs' breach of contract claim is the money that they invested with the defendants. Therefore, the Court will apply Puerto Rico law to the plaintiffs' claims.

## C.   Plaintiffs' Breach of Contract Claim

Plaintiffs claim that defendants materially breached the agreement between the parties by "not performing its contractual obligations as agreed upon" and by not honoring the certificates of investment that the defendants gave to plaintiffs.  (Docket No. 3 at ¶¶ 3, 17, & 20.)  In order to assert a claim for breach of contract in Puerto Rico, plaintiffs must "sufficiently allege (1) a valid contract, (2) breach of that contract, and (3) resulting damages."  Total Petroleum Puerto Rico Corp. v. Colon, 819 F.Supp.2d 55, 69 (D.P.R. 2011) (internal quotations and citation omitted).

### 1.   A Valid Contract

Puerto Rico law has three requirements for a valid contract:  "(1) the consent of the contracting parties, (2) a definite object which may be the subject of the contract, and (3) the cause for the obligation which may be established."  P.R. Laws. Ann. tit. 31, § 3391; see also Bianchi-Montana, 720 F.Supp.2d at 164 (internal citations omitted).  The Puerto Rico Civil Code elaborates on what must be shown to meet all three requirements.

Civil No. 11-1513 (FAB)                                              9

The Court finds that plaintiffs have alleged sufficient facts to meet all three requirements.

### a.   Consent

With regard to the first requirement, consent is shown "by the concurrence of the offer and the acceptance of the thing and the cause which are to constitute the contract." P.R. Laws. Ann. tit. 31, § 3401.  If the language of the contract is unclear, then the Civil Code provides that the terms of the contract must be determined by examining the intent of the parties "in light of the parties' 'contemporaneous and subsequent' acts." Bianchi-Montana, 720 F.Supp. at 164 (internal citations and quotations omitted).  Any "obscurity in the language," however, will be "construed against the originator of the language." Id. at 164 (citing Autoridad de Energia Electrica de Puerto Rico v. Ericsson Inc., 201 F.3d 15, 18 (1st Cir. 2000)(citing P.R. Laws Ann. tit. 31, § 3478)).

Plaintiffs have alleged sufficient facts to meet the first requirement because they have presented certificates to support plaintiffs' claim that Prestauto entered into an investment contract with them. (Plaintiffs' Exh. 1.)  All of the certificates contain the signatures of at least one plaintiff and a representative of Prestauto.  Id.  Each certificate clearly states the amount that plaintiffs invested with Prestauto and also states that Prestauto agrees to pay annual interest at a fixed

rate.[4]   <u>Id.</u>   Furthermore,  each  certificate  contains  a  clause
indicating  that  the  investors  can  request  Prestauto  to  repay  the
sum  by  a  certain  agreed-upon  date  provided  that  the  investors  give
the  company  written  notice  at  least  three  days  prior  to  the
expiration  date.   <u>Id.</u>   The  certificates  contain  blanks  for  the
parties  to  fill  in  those  dates  but  they  have  not  been  filled  in.
<u>Id.</u>   Plaintiffs  state  that  the  certificates  can  be  exchanged  for
cash  at  any  time.   (Docket  No.  3  at  ¶  12.)   The  empty  blanks
support  plaintiffs'  argument  that  there  was  no  expiration  date  for
them  to  request  their  money.   Therefore,  the  Court  finds  that
plaintiffs  have  shown  that  both  plaintiffs  and  defendant  Prestauto
consented  to  plaintiffs'  investment,  that  defendant  Prestauto  would
pay  the  plaintiffs  a  fixed  annual  percentage  of  interest,  and  that
the  plaintiffs  can  make  a  demand  for  their  money  at  any  time.

        **b.   An Object of the Contract and Cause for the
           Obligation**

        The  Puerto  Civil  Code  states  that  the  second
and  third  requirements  for  a  contract  must  be  construed  liberally.
<u>Bianchi-Montana</u>,  720  F.Supp.  at  166.   With  regard  to  the  second

---

    [4] As stated earlier, plaintiffs submitted five certificates –
three of them were dated August 4, 2008, one was dated March 2,
2009, one was dated March 6, 2009, and one was dated October 30,
2009.  The three certificates from August 4, 2008, stated that
Prestauto would pay annual interest rates of ten percent, six
percent,  and  seven  percent,  respectively,  on  plaintiffs'
investments.  The other three certificates each indicated that
Prestauto will pay seven percent of annual interest on the
plaintiffs' investment.

requirement, the Civil Code provides that "[a]ll things, even future ones, which are not out of the commerce of man, may be the object of a contract." P.R. Laws Ann. tit. 31, § 3241. Furthermore, the third requirement - a cause for obligation - "encompasses almost any motivation a person might have for entering into a binding agreement." Bianchi-Montana, 720 F. Supp. at 166 (internal quotations and citations omitted).

Plaintiffs have alleged and provided certificates to show that in exchange for their initial investment, defendant Prestauto obliged itself to pay the plaintiffs a fixed annual percentage of interest. Therefore, the complaint alleges the exchange of an object, the initial investment by plaintiffs, for a cause for obligation, an increase in the value of their money through the investment. The Court thus finds that plaintiffs have pled sufficient facts to meet the second and third requirements of a valid contract under Puerto Rico law.

### 2. Breach of Contract and Resulting Damages

Plaintiffs also plead that they have requested payment from the defendants but to no avail. (Docket No. 3 at ¶ 17.) As indicated earlier, because default has been entered against the defendants, defendants admit to the well-pled factual allegations in plaintiffs' complaint. Therefore, because defendants have not paid plaintiffs after plaintiffs have requested

payment of their money, defendants have breached their investment
contract with plaintiffs.

  With regard to the resulting damages, "[u]nder
Puerto Rico law, '[d]amage is any material or moral loss suffered
by a person, either in its natural rights or in its property or
patrimony, brought about by violation of a legal provision and
which is chargeable on another party.'" Muñiz-Olivari v. Stiefel
Laboratories, Inc., 441 Fed. Appx. 4, 6 (1st Cir. 2011) (citing
Garcia-Pagan v. Shiley Caribbean, 22 P.R. Offic. Trans. 183, 196
(P.R. 1988)). Plaintiffs allege that they have suffered "severe
damages, in the form of mental suffering and anguish . . . as well
as severe loss of monies, expenses, profits and costs." (Docket
No. 3 at ¶ 18.) Given that plaintiffs have alleged that they
invested $141,712.10 and provided proof of it in the form of signed
certificates, plaintiffs are entitled to their investment, profits
and costs. Thus, plaintiffs are entitled to damages limited to the
amount in the certificates, which is $141,712.10, plus interest as
indicated in each certificate, from the date listed on each
certificate up to and including final payment.

  Additionally, plaintiffs have requested damages
based on their mental suffering and anguish. The Puerto Rico
Supreme Court has held that a party to a contract in a civil action
for a breach of contract that does not involve any separate tort
allegations may obtain damages for suffering and mental anguish,

"as long as [the damages] could have been foreseen at the time the obligation was entered into and are a necessary consequence of the breach." Muñiz-Olivari,[5] 441 Fed. Appx. at 4.   The answer to whether the damages could have been foreseeable depends on the facts and "circumstances of each case." Muñiz-Olivari v. Stiefel Labs., Inc., Civ. No. 03-2076 (JP), 2010 WL 891324 (D.P.R. March 8, 2010), ECF No. 126 at p. 9.   Therefore, the Puerto Supreme Court held that it is not whether those damages are indemnifiable but rather it is *when* the damages are indemnifiable.   Id. (emphasis added).   Based on the plaintiffs' complaint and testimony at the evidentiary hearing, the Court finds that mental anguish damages are foreseeable.   The defendants could reasonably anticipate that, as a consequence of losing over $100,000 and the interest from that money, plaintiffs would suffer mental anguish.   Furthermore, plaintiff Rosario stated that defendant Guzman knew that both of the plaintiffs' mothers lived in the Dominican Republic and one of the purposes of investing their money with defendant Guzman was so that they could use the money to pay the people they hired to assist their mothers.   (Docket No. 20 at p. 14.)   Plaintiffs

---

[5] In this case, the First Circuit Court of Appeals instructed the district court to certify the issue of whether a party to a contract in civil action for a breach of contract may obtain damages for suffering and mental anguish to the Supreme Court of Puerto Rico.   Muñiz-Olivari, 441 Fed. Appx. at 5.   "A certified translation of the Puerto Rico Supreme Court's opinion was filed in the district court docket for this case." Id. at 5, n. 2; see also Muñiz-Olivari v. Stiefel Labs., Inc., Civ. No. 03-2076 (JP), 2010 WL 891324 (D.P.R. March 8, 2010), ECF No. 126.

Civil No. 11-1513 (FAB)                                                   14

indicated that defendant Guzman would receive the checks written by
plaintiffs from their American bank and defendant Guzman would then
"cash the checks with no problem" because he "had that kind of
account in an American bank" as well, and defendant Guzman would
take some of the money gained from the investment to pay the people
assisting the plaintiffs' mothers.  Id. at pp. 14-15.  Given that
at the time of contract formation, defendants knew about this
reason for plaintiffs' investment, it is foreseeable that
plaintiffs would suffer mental anguish.  Accordingly, plaintiffs
Acosta and Rosario are entitled to $15,000 each in damages for
mental anguish and suffering.

    D.   **Plaintiffs' Claims for Unjust Enrichment**

         Plaintiffs also allege a cause of action under an unjust
enrichment theory.  (Docket No. 3 at ¶¶ 23-25.)  The unjust
enrichment doctrine, however, does not apply in Puerto Rico where
"there is a legal precept (e.g., a binding agreement) that excludes
the application of such doctrine." Puerto Rico Telephone Co., Inc.
v. Sprint Com., Inc., 662 F.3d 74, 97 (1st Cir. 2011) (citing
Hatton v. Municipality of Ponce, 1994 P.R.-Eng. 909, 605 (1994)).
Thus, under Puerto Rico law, where a contract governs the dispute
at issue, the unjust enrichment doctrine does not apply.  Id.
(internal citations omitted).  Given that the Court has found that
a valid contract governs plaintiffs' claims, plaintiffs' motion for

default judgment on an unjust enrichment theory is **DISMISSED WITH PREJUDICE.**

### E.   Plaintiffs' Investment Fraud Claim

Plaintiffs also contend that defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  The Court finds, however, that plaintiffs' claim does not pass muster under the stringent pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), and under the pleading requirements set out by the First Circuit Court of Appeals.  Therefore, plaintiffs' motion for default judgment based on an investment fraud claim is **DISMISSED WITHOUT PREJUDICE.**

### 1.   Statute of Limitations

Pursuant to Section 804 of the Sarbanes-Oxley Act, 116 Stat. 801, codified at 28 U.S.C. 1658(b), a claim under Section 10(b) and Rule 10b-5 must "be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." FirstBank Puerto Rico, Inc. v. La Vida Merger Sub, Inc., 638 F.3d 37, 38 (1st Cir. 2011) (citing 28 U.S.C. §1658(b)(1)).  The Supreme Court has clarified that a "discovery" in such a situation occurs (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting

the violation' - whichever comes first." <u>Merck & Co., Inc. v.
Reynolds</u>, -- U.S. ----, 130 S.Ct. 1784, 1789-90 (2010).

          Plaintiffs' complaint fails to state when they
discovered facts regarding defendants' alleged securities laws
violations.  (<u>See</u> Docket No. 3.)  In his testimony during the
evidentiary hearing, however, plaintiff Acosta stated that he has
not received any return from his investment because defendant
Guzman's business has been closed since 2010.  (Docket No. 20 at
p. 9.)  He also indicated that afterwards, he tried to contact
defendant Guzman on "various occasions." <u>Id.</u>  Plaintiff Acosta did
not specify when he discovered that defendant Guzman's business was
closed in 2010.  <u>Id.</u>  A trial court may dismiss a plaintiff's claim
based on the statute of limitations "when the pleader's allegations
leave no doubt that an asserted claim is time-barred." <u>LaChapelle
v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998).
Plaintiffs filed their claim on June 7, 2011.  (Docket No. 3.)
Even if the Court uses the earliest date possible in 2010,
January 1, 2010, as the date when plaintiffs discovered the facts
constituting the alleged violations, plaintiffs have brought their
claim within the applicable statute of limitations.

          **2.   Heightened Pleading Standards**

          Plaintiffs allege that defendants violated
Section 10(b) of the Exchange Act and Rule 10b-5 (Docket No. 3 at
p. 5.)  Section 10(b) and Rule 10b-5 require plaintiffs to plead

(1) material misrepresentations or omissions; (2) that were made
with scienter; (3) in connection with the purchase or sale of a
security; (4) plaintiffs' reliance on those misrepresentations or
omissions; (5) economic loss; and (6) loss causation. Automotive
Industries Pension Trust Fund v. Textron, Inc. 682 F.3d 34, 37 (1st
Cir. 2012) (citing ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d
46, 58 (1st Cir. 2008)).  Because plaintiffs are claiming that
defendants have committed investment fraud, plaintiffs are subject
to the heightened pleading standards of Federal Rule of Civil
Procedure 9(b) and the PSLRA.  Rule 9(b) states that when "alleging
fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake."  Fed.R.Civ.P. 9(b).
Furthermore, when private parties assert claims of securities fraud
pursuant to Section 10(b) of the Exchange Act and Rule 10b-5, the
PSLRA establishes additional strict pleading standards.  15 U.S.C.
§ 78u-4(b)(1)-(2); see also In re Stone & Webster, Inc., Sec.
Litig., 414 F.3d 187, 191 (1st Cir. 2005).

          With regard to the material statements or omissions,
the PSLRA requires plaintiffs to do the following in their
complaint:  (1) "specify each statement alleged to have been
misleading;" (2) state "the reason or reasons why the statement is
misleading;" and (3) "if an allegation regarding the statement or
omission is made on information and belief, . . . state with
particularity all facts on which that belief is formed."  15 U.S.C.

§ 78u-4(b)(1). These stringent requirements must be complied with even if "the fraud relates to matters peculiarly within the knowledge of the opposing party." Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999) (internal quotation marks and citation omitted).

       Prior to the enactment of the PSLRA, the First Circuit Court of Appeals not only "required a fraud plaintiff to specify each allegedly misleading statement or omission," but it also required the plaintiff to identify the time and place of each statement or omission. Id. at 193 (discussing other First Circuit cases that occurred prior to 1995, which held that the time, place, and content of the alleged misrepresentations must be identified). Furthermore, in addition to "alleg[ing] the time, place, and content of the alleged misrepresentations with specificity," the plaintiff must also state 'factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the offering, and were known and deliberately or recklessly disregarded by the defendants.'" Id. at 193-94 (citing Romani v. Shearson Lehman Hutton, 929 F.2d 857, 878 (1st Cir. 1991)).

       The PSLRA also imposes an additional requirement related to scienter, which is "a mental state embracing intent to deceive, manipulate, or defraud." See 15 U.S.C. § 78u-4(b)(2); Aldridge v. A.T. Cross Corp., 284 F.3d 72, 82 (1st Cir. 2002) (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12

(1976)).  The plaintiff must plead facts "giving rise to strong inference that the defendant acted with the required state of mind."  See 15 U.S.C. § 78u-4(b)(2).  Therefore, the First Circuit Court of Appeals has held that plaintiffs must establish with a strong inference that "defendants consciously intended to defraud, or that they acted with a high degree of recklessness."  N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc., 537 F.3d 35, 44 (1st Cir. 2008) (internal citation omitted).  In the PSLRA, Congress did not define what is sufficient to plead a "strong inference" but the Supreme Court held that a strong inference of scienter "must be more than merely plausible or reasonable - it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007).  Moreover, "[s]cienter must be examined by looking at the complaint as a whole."  N.J. Carpenters, 637 F.3d at 45.  "A court must weigh 'not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged.'"  Id. (internal citation omitted).

### 3.  Analysis

Plaintiffs' complaint fails to meet the stringent requirements set forth by the PSLRA and the First Circuit Court of Appeals for scienter.  Plaintiffs have failed to plead sufficiently or with particularity about the misrepresentations or omissions by the defendants.  Plaintiffs have also failed to plead sufficiently

a strong inference that "defendants consciously intended to defraud, or that they acted with a high degree of recklessness." N.J. Carpenters, 537 F.3d at 44.

Plaintiffs contend that defendant Guzman "made a business proposition" to plaintiffs in which "potential investors would invest funds through [defendant Guzman's] company and . . . various investments that [defendant Guzman] would oversee and control." (Docket No. 3 at ¶ 11.) Defendant Guzman allegedly promised a high rate of return of between six and eight percent on plaintiffs' investment and made promises that their money was "invested in a legal manner . . . protected from any form of fraudulent money scheme." Id. at ¶¶ 11-13. Plaintiffs do not provide any more detail about these conversations, when they occurred,[6] what defendant Guzman stated about such investments, and the reasons why the statements by defendants were misleading. Therefore, plaintiffs allege that those statements were made on heir own "information and belief" but fails to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78-u4(b)(1). Assuming that plaintiffs did meet this requirement

---

[6] As stated earlier, it is unclear when defendants solicited plaintiffs' investment and when plaintiffs began to invest with defendants. Plaintiffs' complaint states that between August 2008 and October 2009, plaintiffs invested a certain amount of money into defendants' business ventures. (Docket No. 3 at ¶ 12.) At the evidentiary hearing, however, plaintiff Acosta stated that he began investing with the defendants "in the year 2000." (Docket No. 20. at p. 8.)

by providing sufficient detail as to "when and in what context such statements were made," see e.g., Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 98-99 (1st Cir. 20007), plaintiffs still fail to plead sufficient facts that defendants acted with scienter.

The First Circuit Court of Appeals has stated that "the requisite scienter is an intent to deceive at the time the promise was made, not a later intent to break a promise already made." Rodriguez-Ortiz, 490 F.3d 92 at 97 (citing United Int'l. Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207 (10th Cir. 2008), aff'd., 532 U.S. 588, 596-97 (2001)). Under the PSLRA, plaintiffs must plead sufficient facts to establish a strong inference that when defendants signed the certificates, they intended to deceive plaintiffs and would not give them any interest or their principal back. Id. (discussing how Wharf Holdings, 532 U.S. at 596-97, distinguishes "between a federal securities claim from an 'ordinary state breach-of-contract' claim on the basis of an allegation of a 'secret[] inten[t] from the very beginning to not honor the option [contract]'").

Plaintiff Acosta contends that he has "not received any return from [his] investment." Id. at p. 9. During the evidentiary hearing, however, plaintiff Acosta admitted that while he did not receive all of his money, whenever plaintiffs needed money in Santo Domingo, Dominican Republic, "[defendant Guzman] would return the interest" by giving money to the people that

plaintiffs hired to take care of their mothers.  (Docket No. 20 at
p. 7, 10 & 14.)  In fact, when the Court asked the plaintiffs how
much money in interest did they receive, plaintiff Acosta said that
he did not know but that he cashed out some of the money and
reinvested a part of the interest.  Id. at p. 10.  Furthermore,
plaintiff Rosario stated that often, when the plaintiffs flew to
the Dominican Republic, they would not have to bring money with
them because they would have a check from the company and cash it
there.  Id. at pp. 14-15.  Plaintiff Acosta then indicated that
when the defendants' business closed in 2010, plaintiffs could not
collect on any more of their money.  Id. at p. 9.  Looking at the
complaint and the information from the evidentiary hearing as a
whole, it is certainly plausible that defendants intended from the
beginning to defraud the plaintiffs.  Plaintiffs have not, however,
alleged a strong inference that this is the case.  Instead, without
more detail from the plaintiffs, it seems that defendants paid
plaintiffs interest at certain points throughout their investment
and when the defendants' business failed, the defendants stopped
paying the plaintiffs.  Therefore, at this stage, the Court cannot
find that plaintiffs have stated "factual allegations that would
support a reasonable inference that adverse circumstances existed
at the time of [defendants'] offering, and were known and
deliberately or recklessly disregarded by the defendants."
Greebel, 194 F.3d at 193-94 (internal citations and quotations

omitted).   Thus, plaintiffs' motion for default judgment with regard to the alleged securities laws violations is **DENIED WITHOUT PREJUDICE.**

### F.   Attorney's Fees

In addition to requesting damages for their claims, plaintiffs also requested $15,000 in attorney's fees and $1,000 in costs.  Plaintiffs fail to provide, however, any legal basis for their right to attorney's fees or explain why they are entitled to attorney's fees.   Therefore, plaintiffs waive this argument.  <u>See United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").   Thus, plaintiffs' request for attorney's fees is **DENIED WITH PREJUDICE.**

### CONCLUSION

For the reasons expressed above, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion for default judgment.  The Court grants plaintiffs' motion for default judgment with regard to their breach of contract claim.  Plaintiffs are entitled to damages limited to the amount in the certificates, which is $141,712.10, plus interest as set forth in each certificate, from the date listed on each certificate up to and including the date of final payment.   In addition, plaintiffs Acosta and Rosario are each entitled to $15,000 in damages for mental anguish and suffering.

Civil No. 11-1513 (FAB)                                                    24

The Court denies the motion with regard to the unjust enrichment claim with prejudice. The Court also denies the motion with regard to the investment fraud claim without prejudice. Furthermore, the Court dismisses plaintiffs' request for attorney's fees with prejudice. Default judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 11, 2012.

<u>s/ FRANCISCO A. BESOSA</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE